GORDON E. R. TROY, PC
Gordon E. R. Troy
3333 Lake Road
PO Box 368
Charlotte, VT  05445
(802) 425-9060 Phone
(802) 425-9061 Fax
**gtroy@webtm.com** E-mail

*Attorney for Plaintiff,* Revise Clothing, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Revise Clothing, Inc.,<br>        Plaintiff,<br><br>               v.<br><br>Levi Strauss & Co.,<br>        Defendant. | Case No.   10-cv-5843 (DAB) |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO DISMISS,
CROSS-MOTION TO STAY PROCEEDINGS IN CALIFORNIA AND
ORDER TO SHOW CAUSE FOR EXPEDITED DISCOVERY**

# TABLE OF CONTENTS

I.  The Facts. ........................................................................................................................ 3

   A.  Revise's Business. ................................................................................................... 3

   B.  Communications between Counsel. ........................................................................ 4

II.  Revise's Declaratory Judgment Action in New York Takes Priority Over LS&Co.'s Action for
Trademark Infringement. ...................................................................................................... 7

   A.  The Party Filing a Declaratory Judgment Action Must Have a Reasonable Apprehension of
Litigation. ........................................................................................................................ 7

   B.  The "First-To-File Rule" Applies Even Where the First-Filed Action Is One for Declaratory
Judgment. ........................................................................................................................ 8

   C.  Revise's Declaratory Judgment Action Was Not An Anticipatory Filing. .................................... 8

   D.  Equity Weighs in Favor of This Court Hearing Revise's Declaratory Judgment Action. ........... 11

III.  Revise's Cross-Motion to Stay Prosecution of the California Action Should Be Granted. ............ 14

IV.  Revise's Order to Show Cause for Expedited Discovery Should Be Granted. .............................. 15

   A.  Applicable Legal Standard ............................................................................................... 15

   B.  Revise's Request for Expedited Discovery Is Reasonable and Supported by Good Cause. ..... 16

VII.  Conclusion. ................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

CASES

*800-Flowers Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128 (S.D.N.Y. 1994) ...... 7, 8, 12, 13, 14

*Adam v. Jacobs,* 950 F.2d 89 (2d Cir. 1991) ....................................................................................... 8

*Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622 (9th Cir. 1991) ................................................. 8

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y.2005) ............................................................... 15

*Bausch & Lomb Inc. v. Alcide Corporation*, 684 F.Supp. 1155 (W.D.N.Y. 1987) ................................ 14

*Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998 (2d Cir. 1969), *cert. den.* 497 U.S. 1064, 90 S. Ct. 1502, 25 L.Ed.2d 686 (1970) ........................................................................................................ 11

*CGI Solutions, LLC and Windpath Sailing Inc. v. Sailtime Licensing Group, LLC.*, 05 Civ. 4120 (S.D.N.Y. Nov. 17, 2005) ............................................................................................ 9, 10, 11, 12

*Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549 (S.D.N.Y. 2000) .......................................... 8, 12

*Continental Casualty Co. v. Coastal Savings Bank*, 977 F.2d 734 (2d Cir. 1992) ................................. 7

*Copulsky v. Boruchow*, 434 F.Supp. 126 (E.D.N.Y. 1982) ................................................................... 13

*Elbex Video Ltd. v. Tecton Ltd.*, 2000 WL 1708189 (S.D.N.Y. Nov. 15, 2000) ..................................... 8

*Eli's Chicago Finest, Inc. v. The Cheesecake Factory, Inc.*, 23 F.Supp.2d 906, 907 (N.D. Illinois 1998) ........................................................................................................................................................... 7

*Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271 (2d Cir. 2008) ................ 11

*Entm't Tech. Corp. v. Walt Disney Imagineering*, No. 03-3546, 2003 WL 22519440 (E.D.Pa. Oct.2, 2003) .......................................................................................................................................................... 16

*Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215 (2d Cir. 1978)*, cert. denied* 440 U.S. 908, 59 L. Ed. 2d 455, 99 S. Ct. 1215 (1979) ................................................................................................................... 8

*First City National Bank and Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989)..................................... 8

*Great American Ins. Co. v. Houston General Ins. Co.*, 735 F.Supp. 581 (S.D.N.Y. 1990) .................... 7

*In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142 (D.D.C.2005) ....................................................... 16

*In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463 (Fed. Cir. 1988) ......................................................... 17

*In re Pneumatiques, Caoutchouc Manufacture et Plastiques Kleber-Colombes*, 487 F.2d 918 (C.C.P.A. 1973) .......................................................................................................................................................... 17

*J. Lyons & Co., Ltd. v. Republic of Tea, Inc.,* 892 F. Supp. 486 (S.D.N.Y. 1995) .................................. 8

*Kmart Corporation v. Key Industries*, 877 F.Supp. 1048 (E.D. Mich., 1994)............................. 9, 10, 11

*Lambert Pharmacal Co. v. Bolton Chemical Corp.*, 219 F. 325 (D.N.Y. 1915) ................................... 17

*M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.*, 2003 WL 24056263 (N.D. Cal. Oct. 27, 2003).... 7, 8

*Merrill, Lynch v. O'Connor*, 194 F.R.D. 618  (N.D. Ill. 2000) ............................................................. 15

*Mobile Video Servs., Ltd. v. National Ass'n of Broadcast Employees and Technicians*, AFL-CIO, 574 F.Supp. 668 (S.D.N.Y. 1983)................................................................................................................... 13

*Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y.1982) .................................................................... 15

*Pirone v. MacMillan, Inc.,* 894 F. 2d 579 (2d Cir. 1990) ........................................................ 8

*Plough, Inc. v. Allergan, Inc.*, 741 F. Supp. 144 (W.D. Tenn. 1990) .................................... 11

*Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002)............... 16

*Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669 (Fed. Cir. 1984) ..... 17

*William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177 (2d Cir. 1969) .......... 11

RULES

Federal Rules of Civil Procedure Rule 26(a)(2)(C) ............................................................... 15

Federal Rules of Civil Procedure Rule 26(d) ........................................................................ 15

Federal Rules of Civil Procedure Rule 26(f) ......................................................................... 15

Federal Rules of Civil Procedure Rule 30(a)(2)(A)(iii).......................................................... 15

Federal Rules of Civil Procedure Rule 33(b)(2) .................................................................... 15

Federal Rules of Civil Procedure Rule 36 ............................................................................. 15

TREATISES

E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941) ...................................................... 11

Revise Clothing, Inc. ("Revise") opposes the motion by Levi Strauss & Co. ("LS&Co.") to dismiss this declaratory relief action aimed at determining whether Revise's trademark, on its face, is confusingly similar to LS&Co's trademark and cross-moves to stay the prosecution of the infringement action filed by LS&Co. in the Northern District of California. In addition, by Order to Show Cause, Revise requests this Court to order expedited discovery on the narrow issued raised by Plaintiff in its Complaint – whether the Revise trademark infringes on LS&Co's trademark.

**Introduction.**

This is not a typical trademark counterfeit infringement dispute. Rather, this is a case of an overly aggressive large company flexing its economic muscle to stifle a smaller competitor in the marketplace. Revise designed and obtained a federal trademark registration for its unique back pocket trademark (the "Vanilla Star Mark") without any intent of coming within the purview of LS&Co.'s famous "arcuate" trademarks (the "Arcuate Mark"). The Vanilla Star Mark is comprised of two asymmetrical arcs of unequal length and radius forming the letter "V" (for "Vanilla") with a horizontal arc passing through the "V" more or less at midpoint. The "V" is not centered on the pockets, but offset to the right (on the left pocket) and to the left (on the right pocket), giving it the appearance of a checkmark. By contrast, the two arcs that form the Arcuate Marks are symmetrical, of equal length and meet in the center of both pockets. There is no third arc as with the Vanilla Star Mark. The official drawings for the parties' respective registered trademarks show immediately discernable and substantial differences between the two.





Vanilla Star Mark                    Levi's Arcuate Mark

Looking at samples of actual products further illustrates the dramatic differences between these marks and the commercial impression conveyed. A mere visual inspection demonstrates that these marks are inherently and distinctly different from each other and, accordingly, not confusingly similar. Obviously, had the Trademark Office believed these two marks to be confusingly similar, it would not have permitted registration of the Vanilla Star Mark on the supplemental register.



Vanilla Star Mark



Levi's Arcuate Mark

Just as Revise made no attempt to come within the purview of the Arcuate Mark when it designed its Vanilla Star Mark, so Revise never engaged in any act which could be constituted as trading on LS&Co.'s goodwill. None of Revise's many customers for Vanilla Star jeans – including large chains such as J.C. Penney, WalMart, Target, K-Mart, Sears and Macy's, all of which are also

customers of LS&Co. – has ever remarked upon, let alone expressed concern over, any similarity between the parties' respective back pocket trademarks. Yet the very threat of action against Revise and its customers could close those doors forever. It was this possibility, and not considerations of simply beating Levi's to the courthouse, which motivated Revise to file this declaratory judgment action.

## I.  The Facts.

### A.  Revise's Business.

Revise is a privately held New Jersey corporation with its principal place of business in New York City at 215 West 40th Street, 2nd Floor, having warehouse and back office operations in Teterboro, New Jersey. In all, Revise occupies approximately 100,000 square feet of space for showroom, warehouse, shipping, design and back office operations. Revise employs approximately 50 people and has some 40 subcontractors working for it at any given time. Additionally, Revise employs or oversees the contracting of another 40 workers through the course of the year to handle peak volumes of its business. *Affidavit of Sandeep Behl, paragraphs 2 - 6.*

Since the beginning of 2010, Revise has sold and delivered approximately 300,000 units of jeans in fifteen different variations bearing the Vanilla Star Mark. This merchandise has a wholesale value of approximately $3.1 million and a retail value of approximately $6.6M. Approximately half of the 300,000 units were sold to JC Penney. The number of stores across the United States carrying these units, including JC Penney, number between 6,000 and 7,000. Currently in various stages of production and shipment are approximately 50,000 more units. *Affidavit of Mark Levy, paragraphs 2-8.*

As attested to by Mark Levy, not a single buyer or customer of Revise has ever suggested that the Vanilla Star Mark is even similar to, let alone likely to be confused with, the Arcuate Mark. It defies all logic that nearly every one of Revise's and LS&Co.'s customers in common, *without exception*, would put themselves at risk of liability to LS&Co., one of the largest clothing manufacturers in the world. What is believable is that Levi Strauss's litigation is aimed squarely at driving Vanilla Star out of

the market. At stake in this action are the continued existence of Revise and the livelihoods of approximately 80 people in the New York metropolitan area who work directly with Revise.

### B.     Communications between Counsel.

On July 7, 2010, Gordon E.R. Troy, counsel for Revise, received a letter from counsel for LS&Co., Marie Seibel, in which she states LS&Co.'s belief that the Vanilla Star Mark "features stitching confusingly similar" to that in the Arcuate Mark, which similarity "may give rise to claims for trademark infringement and dilution that would entitle LS&Co. to injunctive relief and monetary damages against Revise Clothing." LS&Co. requested a response within ten days and asked Revise for "binding written assurances" that it would, among other things, discontinue the use of the Vanilla Star Mark and have "no further involvement in the manufacture, distribution or sale of goods under LS&Co.'s trademarks" -- something that Revise has never done.

In his response of July 13, 2010, Mr. Troy wrote that "I trust that you will provide me with the courtesy of time to appropriately consider this situation and respond accordingly." Mr. Troy's letter contained no promises regarding settlement or even a discussion of settlement. No binding written assurance was given by Revise.

Subsequently, Mr. Troy and Ms Seibel attempted to schedule a conference call. Oddly, LS&Co. characterizes the scheduling of a conference call as a delaying tactic on Mr. Troy's part, yet the e-mail correspondence clearly shows scheduling conflicts on both sides. Although the correspondence plainly speaks for itself, it is worth highlighting the following e-mail communications:

*Ms. Seibel to Mr. Troy on July 15*: "<u>My apologies for the delay in responding</u> - I was out of the office. I'll be available from 2:00 - 3:30 EST on Friday if that works for you."

*Ms. Seibel to Mr. Troy on July 21*: "<u>My apologies for the delay in responding</u>. I'm going out of town tomorrow and it's been a hectic week getting ready for my trip. Are you free for a call on Tuesday [July 27]? If so, please suggest some times that are good for you."

*Mr. Troy to Ms. Seibel on July 21*: "Next Tuesday is fine. At this point I can move things around to accommodate you as I have nothing that is immovable. I certainly understand the hectic week situation."

*Ms. Seibel to Mr. Troy on July 21*: "<u>I appreciate your flexibility</u>. How is 1 EST for you?" [Emphasis added.] *See, Seibel Decl. Exh. B-C.*

As set forth in Mr. Troy's Declaration in Opposition to Defendant's Motion to Dismiss, the facts of the conversation with Ms. Seibel are very different from those declared by Ms. Seibel. *See, Troy Decl. paragraphs 4-6.* For good reasons, Mr. Troy did not believe that there was an imminent danger of LS&Co. filing an infringement action. First, Ms. Seibel informed Mr. Troy that she had never seen Revise's products and was totally unfamiliar with what was in the marketplace. Mr. Troy informed her that Revise was using the Vanilla Star Mark in different stitchings, embellishments and washes, which she apparently misunderstood to mean that Mr. Troy was unsure whether his client was using the Vanilla Star Mark at all.

Second, when Mr. Troy asked what LS&Co. wanted, Ms. Seibel answered that she wanted Revise to stop using the Arcuate Mark. Mr. Troy responded that Revise was not using the Arcuate Mark and he saw no merit in that claim, based on his own assessment of the two marks and his conversation with an expert who said a survey would conclusively demonstrate that the marks are not confusingly similar. Third, Mr. Troy did not believe Ms. Seibel was particularly urgent about the telephone conversation, which was put off to accommodate both Mr. Troy's and Ms. Seibel's schedules. Finally, Ms. Seibel never indicated that LS&Co. was holding back on filing a lawsuit in order to give Revise time to "negotiate." In fact, during the conversation Ms. Seibel repeated LS&Co.'s demands that Revise cease from using the Vanilla Star Mark and withdraw all product from the marketplace. The conversation was not a negotiation -- there was no negotiation. Rather, LS&Co. was demanding total capitulation or nothing. From that conversation, Mr. Troy concluded that negotiations were pointless because LS&Co. knew its case was without merit, but had taken a coercive stance expecting Revise to capitulate.

On July 30, 2010, Mr. Troy sent Ms. Seibel a letter attempting to confirm and clarify the position taken by Ms. Seibel during their July 27th conversation. It is simply not true, as LS&Co. claims

in its Memorandum of Law, that Mr. Troy's July 30th letter "reiterated his promise to produce samples showing various embellishments of its design...." *Levi's Memorandum of Law page 2, paragraph 2.* No promises of any kind are contained in the letter. The letter simply lays out LS&Co.'s position from which no negotiation was possible.

LS&Co.'s attorneys say they were "tricked" by Mr. Troy's "pleas" for more time, but there is reason to doubt such a claim. The statement in LS&Co.'s Motion to Dismiss – "[t]he next day, Levi Strauss filed its suit in the Northern District of California -- which it had been holding pending the outcome of Revise's requested settlement discussions" [emphasis added] – is untrue. There were never any "pleas" and there was never a request from Mr. Troy for settlement discussions. Furthermore, when LS&Co. filed its lawsuit in California it is unlikely that it was aware of Revise's filing in New York the day before.[1] Thus it would appear that LS&Co.'s attorneys were not "tricked" into abeyance, did not rely on what they now claim were pleas and exhortations, and filed their lawsuit at an opportune moment, when they knew Mr. Troy would be on vacation.

Despite LS&Co.'s characterization of Revise's motives in filing this action, the decision was no mere exercise in forum shopping. As Mr. Troy states in his Declaration:

> Following my conversation with Ms. Seibel, I discussed the matter with my client, who impressed upon me the importance of resolving LS&Co.'s threats as expeditiously as possible given the amount of product in production and distribution, and in the marketplace. A lawsuit by Levi's during the coming back-to-school and pre-Christmas selling seasons would have catastrophic consequences for Revise. Moreover, if the Vanilla Star Mark was infringing, damages would continue to accrue. As it was impossible to know when LS&Co. would file a lawsuit, and what the scope of that lawsuit would be, the decision was made to take immediate action by seeking a declaratory judgment.

*Declaration of Gordon Troy, Paragraph 10.* Clearly, Revise should not have been required to wait for LS&Co. or to contact LS&Co. and ask it to sue Revise as soon as possible.

---

[1] The Complaint in this action was not served on LS&Co. until after it had filed its lawsuit in California.

**II.     Revise's Declaratory Judgment Action in New York Takes Priority Over LS&Co.'s Action for Trademark Infringement.**

> A.     *The Party Filing a Declaratory Judgment Action Must Have a Reasonable Apprehension of Litigation.*

The federal Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of the appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration…" 28 U.S.C. § Section 2201(a). In order to avail itself of the provisions of the Act, however, a party must be in reasonable apprehension of a lawsuit. If it is not, "then a court may not exercise jurisdiction because there is no case or controversy." *M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.*, 2003 WL 24056263 (N.D. Cal. Oct. 27, 2003)

Declaratory judgment actions are intended to "terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *Eli's Chicago Finest, Inc. v. The Cheesecake Factory, Inc.*, 23 F.Supp.2d 906, 907 (N.D. Illinois 1998).  They are particularly appropriate where, as here, any "delay in seeking judicial intervention will cause substantial prejudice to the declaratory judgment plaintiff." *800-Flowers Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 133 (S.D.N.Y. 1994), *citing Great American Ins. Co. v. Houston General Ins. Co.*, 735 F.Supp. 581, 585 (S.D.N.Y. 1990). The continued accrual of damages is one such substantial prejudice a declaratory judgment plaintiff might suffer. *See, Continental Casualty Co. v. Coastal Savings Bank*, 977 F.2d 734, 738 (2d Cir. 1992).

At the time it filed this action Revise reasonably feared legal proceedings by LS&Co. While the lawsuit from LS&Co. did not seem imminent to Revise's counsel, Revise could not wait for a determination of its rights given some 50,000 units in production and distribution and some 300,000 units in the marketplace in 6,000-7,000 stores across the United States.

B. *The "First-To-File Rule" Applies Even Where the First-Filed Action Is One for Declaratory Judgment.*

"It is a 'well-settled principle' in this circuit that where proceedings involving the same parties and issues are pending simultaneously in different federal courts the first-filed of the two takes priority absent 'special circumstances' or a balance of convenience in favor of the second." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 555 (S.D.N.Y. 2000), *citing First City National Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989); *800-Flowers Inc.* at 131. This rule "should not be disregarded lightly." <u>Id</u>. *citing Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622 (9th Cir. 1991).

Although a court is not required to hear the first-filed action where the difference in filing date is, as it is here, *de minimus*, *Elbex Video Ltd. v. Tecton Ltd.*, 2000 WL 1708189 (S.D.N.Y. Nov. 15, 2000), the Declaratory Judgment Act clearly gives courts the discretion to do so, even where the first-filed action is one for declaratory judgment. Indeed, a court ought to hear the first-filed action when, in balance, it is favored by circumstances, the purposes of the statute and principles of equity.

C. *Revise's Declaratory Judgment Action Was Not An Anticipatory Filing.*

One "special circumstance" which justifies a court's refusal to hear a first-filed action is when the action is deemed "anticipatory." Generally speaking, an action is "anticipatory" if the plaintiff in the first-filed declaratory judgment action had received "concrete indications that a suit by the defendant was imminent." *M.D. Beauty, supra*. Determining whether a lawsuit is "imminent" involves a certain degree of subjective judgment, so that courts will often look for the answer in the totality of the circumstances of the case, including correspondence and conversations between counsel. *J. Lyons & Co., Ltd. v. Republic of Tea, Inc.,* 892 F. Supp. 486, 490 (S.D.N.Y. 1995). *See also, Adam v. Jacobs,* 950 F.2d 89, 92 (2d Cir. 1991); *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied* 440 U.S. 908, 59 L. Ed. 2d 455, 99 S. Ct. 1215 (1979), *overruled on other grounds in Pirone v. MacMillan, Inc.,* 894 F. 2d 579 (2d Cir. 1990).

Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss,
Cross-Motion to Stay Proceedings in California and Order To Show Cause for Expedited Discovery

Page 8
Case No.   10-cv-5843 (DAB)

There is no better place to begin the discussion of whether Revise filed anticipatorily than *CGI Solutions, LLC and Windpath Sailing Inc. v. Sailtime Licensing Group, LLC.*, 05 Civ. 4120 (S.D.N.Y. Nov. 17, 2005), decided by this Court on November 17, 2005 (hereinafter cited as "*CGI*"). There, the attorney for Sailtime sent a letter to Windpath dated April 5, 2005, demanding, among other things, that he "cease any and all marketing and promotion activities that use any information disclosed to [him] by SailTime." *CGI*, p. 4. The letter further provided that should Windpath fail to accede to Sailtime's demands, Sailtime "will pursue all civil remedies available to it if necessary…." Several weeks later, without responding to Sailtime's demands, plaintiffs filed their declaratory judgment action.

The letter in the present case sent by LS&Co.'s attorney ("[s]uch likely confusion may give rise to claims for trademark infringement and dilution" (emphasis added)) unquestionably resembles the letter sent by Sailtime's attorney ("Sailtime…will pursue all civil remedies available to it if necessary…"). Although the word "may" does not carry the same weight as "will," the differences between *CGI* and the case at bar are more substantial. While the plaintiffs in *CGI* filed their declaratory judgment action a few weeks later without so much as a conversation between the parties, in this case there were intervening events that gave Revise's counsel bona fide reasons to think that LS&Co. was posturing. From his conversations with an expert on proving likelihood of confusion (the *sine qua non* of trademark infringement) and from his telephone conversation with Ms. Seibel (the scheduling of which seemed to Mr. Troy to lack any urgency), Mr. Troy concluded that LS&Co. was not on the verge of filing a lawsuit, but had taken a coercive, intransigent out-of-court stance because it knew its case was meritless or weak at best and hoped Revise would capitulate to all its demands.

There are other factors weighing in favor of Revise's action not being mainly anticipatory. Courts have consistently held that the Declaratory Judgment Act should not be applied in a manner which would "encourage would-be trademark plaintiffs to file suit rather than resolve their disputes amicably by providing the incentive of forum choice to file suit quickly." *Kmart Corporation v. Key Industries*, 877 F.Supp. 1048, 1053 (E.D. Mich., 1994). But if anticipatory filings are discouraged

because they "contravene the judiciary's policy of encouraging settlement between adversaries," *CGI* at p. 11, there is no danger of violating such a policy here. Other than total accession by Revise to LS&Co's demands, there was no room for negotiation and therefore no reason for either party to hold back from filing an action.

In *Kmart*, the District Court found that while plaintiff *appeared* to have filed an anticipatory declaratory judgment action, federal policy was not violated because, at the time Kmart filed, there was no possibility of settlement with its adversary.  The facts in *Kmart* resemble those in the present case. In *Kmart*, the defendant who was claiming infringement believed, from the contents of a telephone call, that Kmart still wished to settle the matter and avoid litigation. "Key contend[ed] that settlement negotiations were in progress," the court held, but "Kmart justifiably believed that Key would accept nothing short of total capitulation" and that negotiation was pointless. *Kmart*, at 1054. , Permitting the second-filed action to proceed would therefore not "promote the policy of encouraging negotiation and settlement" and the court thus declined to "disturb the choice of forum of the party that filed the first complaint." *Kmart*, at 1054.

Contrary to LS&Co.'s claim in its Motion to Dismiss that the parties were in the midst of settlement discussions, Ms. Seibel never gave any indication to Mr. Troy that LS&Co. would offer anything different from the demands contained in her July 2nd letter. As she states in paragraph 6 of her Declaration:

> I also reiterated the requests made in my July 2 letter, namely that Revise relinquish its trademark registration, cease using the design, and provide information regarding its sales of products bearing the design (for the purpose of assessing Levi Strauss's damages.)

There was no basis on which she could reasonably have concluded that she was in a negotiation with Mr. Troy or that there was a possibility of an "amicable" settlement. Consequently there can be no violation of the statute's policy to encourage negotiation and settlement.

Furthermore, LS&Co. mischaracterizes the communications between the parties when it claims in its Motion to Dismiss that "all of these apologies, pleas for more time, and exhortations about avoiding litigation" coaxed LS&Co. into withholding the filing of its lawsuit. The correspondence shows delays on both sides, no discussions of any terms of settlement and no exhortations at all. If LS&Co. seriously believed that Mr. Troy was negotiating, it certainly ignored him. Either LS&Co. filed the California action without knowing of this one or delayed its filing for its own purposes, i.e., the hope that Revise would capitulate.

> In this day and age, a party who threatens to file suit in order to obtain a concession, but delays, acts at the risk that the threatened party will be the first to file. Absent special circumstances, when there are two competing lawsuits, the first filed has priority. *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177 (2d Cir. 1969).

*Plough, Inc. v. Allergan, Inc.*, 741 F. Supp. 144, 147 (W.D. Tenn. 1990). The Second Circuit's view of the exception for "special circumstances" is narrow enough that an action is only deemed "anticipatory" when it is filed in response to a direct threat of litigation which gives specific warnings as to deadlines and subsequent legal action. *Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 276 (2d Cir. 2008). Given the circumstances in this case, Revise was within its rights to seek a judicial determination of non-infringement of the Arcuate Mark.

> D.    *Equity Weighs in Favor of This Court Hearing Revise's Declaratory Judgment Action.*

In addition to inquiring whether a case was filed in the face of an imminent threat of a lawsuit, courts look to additional factors in determining whether to exercise their jurisdiction over declaratory judgment actions. As this Court has stated,

> The Second Circuit has explained that a declaratory judgment may be rendered where it will serve a useful purpose in clarifying and settling the legal relations at issue, and … when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding. *Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969), *cert. den.* 497 U.S. 1064, 90 S. Ct. 1502, 25 L.Ed.2d 686 (1970) (quoting E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941)).

*CGI*, supra, at pp. 15-16; *see also*, *Kmart*, supra, at 1052.

There is every indication that this action can be decided far more quickly and simply than the trademark infringement suit in San Francisco. Unlike the declaratory judgment action in *CGI*, the action here is not a mirror-image of the second-filed suit. Rather, it deals with one issue: whether on its face the Vanilla Star Mark is confusingly similar to the Arcuate Mark. No reams of documents or extensive depositions of multiple witnesses from San Francisco are required. Indeed such evidence is *irrelevant* to the determination, which requires only the reports and testimony of the parties' respective experts. Furthermore, there are no known instances of or even any allegations of actual confusion, which minimizes the possibility that testimony beyond experts and party representatives will be sought.

The Order to Show Cause filed simultaneously with this Opposition to Motion to Dismiss asks this Court to set an expedited discovery schedule of three months because that is how quickly Revise envisions the resolution of this case. There is every effort here by Revise to avoid the continued "accrual of avoidable damages." The action in San Francisco, on the other hand, will not be quickly resolved, as it will require extensive discovery by LS&Co., including but not limited to pouring through voluminous records of Revise's sales to approximately 7,000 stores across the United States and deposing multiple employees and officers of Revise, all located in the New York metropolitan area.

The balance of conveniences of this declaratory judgment action also runs in favor of Revise. The factors to be considered include:

> (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *800-Flowers*, at 133

*Citigroup* at 560-61. Each of these factors weighs in favor of Revise and the continuation of this declaratory judgment action.

LS&Co.'s claim in its California complaint that "a substantial part of the events giving rise to the claims" in its action "arose in" the Northern District of California is patently false**.** Revise's

contacts with the Northern District of California are minimal at best, consisting solely of sales to

national retail chains which have stores located there but which purchase merchandise from Revise

from offices far outside the Northern District. As confirmed by Mr. Behl of Revise, no sales of products

bearing the Vanilla Star Mark were made or shipped directly by Revise into the Northern District of

California. *Affidavit of Sandeep Behl, paragraph 7.* The business of Revise and the sale of merchandise

bearing the Vanilla Star Mark have all occurred in the New York metropolitan area, thousands of miles

away from San Francisco.

LS&Co.'s belief there would be no convenience in deciding this matter in New York is based

on a number of false premises. LS&Co. states:

> Alleged infringers routinely request to review thousands of oversized advertisements
> and other documents in litigation regarding the Company's marks. If a case is not
> resolved, they routinely depose between four and six witnesses, all located in San
> Francisco. Seibel Decl., ¶ 14. Levi Strauss will have the burden of proof at trial and is
> likely to call more witnesses to testify live. If anything, on balance, the Northern District
> of California is more convenient than the Southern District of New York, which is not
> even the home district for Revise or its counsel.

Quite to the contrary, Revise's offices are in New York, it is authorized to do business in New York and

it pays taxes in New York. All of its witnesses are in New York and the events that gave rise to this

claim occurred in the New York metropolitan area. "The location of the operative facts is traditionally

an important factor to be considered in deciding where a case should be tried. *Mobile Video Servs., Ltd.

v. National Ass'n of Broadcast Employees and Technicians*, AFL-CIO, 574 F.Supp. 668, 670-71

(S.D.N.Y. 1983); *Copulsky v. Boruchow*, 434 F.Supp. 126, 128-9 (E.D.N.Y. 1982)." *800-Flowers* at

134.

Furthermore, LS&Co.'s contacts with the Southern District are substantial as owners and

operators of multiple Levi's-branded stores. LS&Co. also vastly overstates its burden of what it would

have to produce in discovery or at trial. Assuming that the parties' respective trademarks were found to

be confusingly similar, LS&Co. well knows that its burden of proof at trial will rest not on defending

its Arcuate Mark, which is famous and incontestable, but on proving willfulness and damages – all of

which involve extensive discovery from Revise.[2] The *vast* bulk of documents that will be sought by either party in the event that this declaratory judgment action fails is located in New York.

The Court should also consider the fact that LS&Co. dwarfs Revise economically. "Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers* at 135. The relative size of the companies clearly favors resolution in New York over California.

## III.     Revise's Cross-Motion to Stay Prosecution of the California Action Should Be Granted.

The power to stay LS&Co.'s California trademark infringement action lies within the discretion of this Court. "Where an action is brought in one Federal District Court and a later action embracing the same issue is brought in another Federal Court, the first action has jurisdiction to enjoin the prosecution of the second action. [Citations omitted.]" *Bausch & Lomb Inc. v. Alcide Corporation*, 684 F.Supp. 1155, 1158 (W.D.N.Y. 1987) Moreover, it is clear that this power extends to declaratory judgment actions where, as here, declaratory judgment "will serve a useful purpose of clarifying and settling the legal relations in issue" and "terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *Id.* at 1158. A determination of non-infringement (or infringement, as the case may be), the only subject matter in the case at bar, is the threshold question in the California trademark infringement lawsuit. Consequently, judicial economy, the avoidance of a multiplicity of actions and considerations of equity require that the California action be stayed pending the outcome of this action.

_____

[2] In its Answer to LS&Co.'s complaint in the California action, attached hereto as Exhibit 1 to Declaration of Gordon Troy, Revise admits so much of LS&Co.'s allegations as pertain to the Arcuate Mark being famous and incontestable.

**IV.     Revise's Order to Show Cause for Expedited Discovery Should Be Granted.**

Together with its Opposition to LS&Co.'s Motion to Dismiss and Cross-Motion for a Stay of the California Litigation, Revise moves by Order to Show Cause to set an expedited schedule for limited discovery aimed at determining whether the Arcuate and Vanilla Star Marks are, on their face, confusingly similar.

A.     *Applicable Legal Standard*

Rule 26(d) of the Federal Rules of Civil Procedure allows a party to seek leave of court to conduct discovery before the parties have conferred as required under Rule 26(f). The Court's discretion to order such expedited discovery is supported by, *inter alia*, Rules 26(a)(2)(C) (expert testimony), 30(a)(2)(A)(iii) (depositions by oral examination), 33(b)(2) (interrogatories), 34(b(2)(A) (documents) and 36 (requests for admissions).

Case law provides specific standards for evaluating expedited discovery motions. Cases in the Southern District of New York diverge, requiring either a standard of "reasonableness and good cause," *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y.2005), or one that requires the moving party to demonstrate

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y.1982).

In Ayyash, the court noted that the reasonableness standard "seem[s] to have the better of the argument," since the Federal Rules of Civil Procedure authorize expedited discovery, but "do not elaborate on the basis for taking action." *Ayyash* at 327. The reasonableness standard requires its own inquiry, of course. The *Ayyash* court concluded that it would look at the "entirety of the record to date and the reasonableness in light of all the surrounding circumstances." *Ayyash* at 327 *citing Merrill, Lynch v. O'Connor*, 194 F.R.D. 618, 623-4 (N.D. Ill. 2000). Other courts have looked to specific factors

in determining whether a request for expedited discovery is reasonable, including but not limited to, "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C.2005) *citing Entm't Tech. Corp. v. Walt Disney Imagineering*, No. 03-3546, 2003 WL 22519440, at *3-5 (E.D.Pa. Oct.2, 2003).

       B.    *Revise's Request for Expedited Discovery Is Reasonable and Supported by Good Cause.*
In fact, under any test it is clear that expedited discovery should be granted. First, expedited discovery serves both parties' interests, as a prompt decision on whether the two trademarks are confusingly similar will resolve the cloud LS&Co. has placed on the Vanilla Star Mark and minimize the accrual of damages. "[C]ourts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition." *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

       Second, the scope of the proposed expedited discovery is narrow and aimed at the specific objective of the declaratory judgment action, which is to resolve the question of confusing similarity, the threshold question for a trademark infringement action.

       Third, the expedited discovery schedule poses no burden on either of the parties other than the financial one to hire appropriate experts. No depositions of the parties' respective officers or employees are required. There need be no production of documents concerning LS&Co.'s advertising and use of the Arcuate Marks in commerce or regarding Revise's sales.

       Fourth, LS&Co. has argued that Revise's use of the Vanilla Star Mark has "caused and will cause LS&Co. irreparable harm" (see paragraph 14 of its Complaint in *Levi Strauss & Co. v. Revise Clothing, Inc.*, 13 Civ. 3427 (2010), filed in the Northern District of California). Should LS&Co. be granted a preliminary injunction in California and the marks are thereafter adjudged not to be

confusingly similar, it will be Revise which has suffered irreparable harm, and very likely an end to its business.

Fifth, Revise has a substantial probability of success on the merits of this declaratory judgment action. The Arcuate and Vanilla Star Marks are discernibly different. This is not a case of counterfeiting or even imitation. The Trademark Office registered the Vanilla Star Mark on the Supplemental Register and would not have done so had it believed that it might be confused with the Arcuate Mark. In the registration process, any doubts about confusing similarity "will be resolved in the favor of the senior user," particularly where the senior user's mark is "famous." *Lambert Pharmacal Co. v. Bolton Chemical Corp.*, 219 F. 325 (D.N.Y. 1915); *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669 (Fed. Cir. 1984); *In re Pneumatiques, Caoutchouc Manufacture et Plastiques Kleber-Colombes*, 487 F.2d 918 (C.C.P.A. 1973); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463 (Fed. Cir. 1988). There is little reason to believe that the examiners would not have been aware of the LS&Co.'s trademark when it registered that of Vanilla Star. Moreover, from its preliminary investigation (speaking to buyers and experts and using its own common sense), Revise believes that the evidence will demonstrate conclusively that there is, in fact, no confusing similarity between the trademarks and thus respectfully asks the Court to provide the earliest opportunity for the parties to present their proofs.

## VII.   Conclusion.

For the foregoing reasons, Revise respectfully requests that the Court (i) deny LS&Co.'s Motion to Dismiss, (ii) grant Revise's Cross-Motion to Stay Prosecution of the California Action and (iii) grant Revise's Motion for an Order to Show Cause for Expedited Discovery.

Dated: August 30, 2010

Respectfully submitted:
GORDON E. R. TROY, PC

/s/ Gordon E. R. Troy
By: _____
    Gordon E. R. Troy
    3333 Lake Road
    PO Box 368
    Charlotte, VT  05445
    (802) 425-9060 Phone
    (802) 425-9061 Fax
    **gtroy@webtm.com** Email

*Attorney for Plaintiff,* Revise Clothing, Inc.